Ruffin, C. J.
 

 Upon the pleadings there are two material questions, on which the parties desire the judgment of the court. The first is, what slaves are subject to the division that is sought? And the second is, whether the plaintiff is entitled, as the assignee of his mother, to her share of those negroes that may be allotted as the portion of her son, Richmond? As to the first point, it is to be observed that all the slaves bequeathed to the widow for life, and their increase are of course now to be divided, unless there has already been a division of some of them; and that the division now to be made is, in the first place, into four equal shares : one for the plaintiff in his own right; one to him as administrator of his brother Richmond; one to the executor of William Love, deceased; and the other to the defendant Leake, the administrator of Mrs. Cole. As respects the pro
 
 *108
 
 portions in which the parties are entitled, as thus stated, there can be no dispute. The real controversy appears to be, whether the former division, which is insisted on by the defendant, shall, as far as it went, stand; or whether it shall be annulled, and thus let in the plaintiff to the benefit of the increase of the slaves allotted in that division to the other owners, both in his original right and as the assignee of his mother.
 

 Upon the matter of fact, it.appears that in January, 1811, the year after the death of Richmond Love, ten negroes, comprising two which he had owned in severalty, and eight in which his mother gave up her life estate to those entitled in remainder, were, as property belonging to the parties jointly and equally, divided into three shares, and one of them assigned to the plaintiff, another to William Love, then living, and the third to Mr. Cole and his three children as representing Mrs. Cole, then deceased. Under that divison the parties took immediate possession of the slaves allotted to them severally, and held, used, and disposed of them as their own in severalty, without any claim set up by any of the parties to the negroes held by the others, or dissatisfaction expressed, as far as appears, until this litigation was begun. Mrs. Love resided in Richmond county, as did also the other parties, all being members of the same family ; so that it cannot for an instant be doubted, that she was fully aware of what was done, and gave her approbation to it. Indeed, the very substratum of the proceeding was her own act; that is. the surrender of her life estate in eight of the negroes. The very object of that surrender must have been a division between her children and grand-children, among whom the division was actually made.
 

 Can it be supposed, then, that she intended to claim, or, rather, that she did not then disclaim and relinquish her interest or share in that portion of the slaves, which she might have claimed as one of the next of kin of her deceased son? Why surrender all if she meant to claim back a part of those eight? In the same manner, doubtless, she acted in reference to the other two slaves, which Richmond owned
 
 *109
 
 in severalty. They were put with the eight the widow had given up, and all ten divided as one fund, or as forming a common property, divisible beneficially into three parts ; that is, one for the two brothers, William and Erasmus, each, and one for Mrs. Cole’s Children. It is true that was. not legally correct; for the division, strictly speaking, should have been into four parts, of which the two surviving bro. thers were entitled to one each ; Cole, as surviving husband, entitled to another; and the fourth was the share of Richmond, deceased, and was again divisible between his mother and brothers, and the children (not the husband) of Mrs. Cole. But it is manifest, if the mother gave up her claim to her distributive share, as she had given up her life estate, that for every purpose, except that of determining the interests of Mr, Cole and his children as between themselves, the division would be into three parts. The plaintiff, for example, being entitled under his father’s will to one fourth part, and, as one. of Richmond’s next of kin, to one third of another fourth part, was thus entitled to get one third of the whole. That is just what he did get, and what his brother William also got. For the purposes of justice, therefore, to those two persons, the division effected all that the most formal and conclusive partition, through the medium of administrations on the estates of the deceased brother and sister, could have done, excepting only that it might not be valid as between Cole and his children, and, therefore, might at the instance of one of them be disturbed. But it is very plain, that at this distance of time the plaintiff ought not to annul the partition, on the ground merely that other persons, by possibility, may have it in their power to repudiate it. The plaintiff ought to make it appear, that some one, who has the power, has rescinded what has been done. But here the contrary is seen to be the case. By the bill it appears, that none of the negroes, allotted as the third of Mrs. Cole, were taken by Mr. Cole, but that they are all in the possession of the children of his deceased wife ; and in consequence of that fact, the plaintiff seeks to exclude those
 
 *110
 
 children from any further share of Richmond’s part of the nPgroesj which are still to be divided. Now, if that be true, the whole difficulty is at once explained, and we see another motive inducing Mrs. Love to give up both her life estate and her distributive share of Richmond’s estate,at least as far ns those negroes constituted a part of it. She gave up tier interests to her children and grand-children, and Mr. Cole in return, gave up to his children, his interest which was in part of the negroes, and which in addition to what those children got from their grand-mother, made their interest also one third of all those negroes. The Court cannot doubt, that such was the true nature of that transaction. The deed or instrument of partition itself is not before, the Court. But its contents are stated by a witness, without objection to his evidence on the score of the non production of the paper J and it appears in that nicinner, that Mr. Cole was a party to the division of 1811, in which that share, which he might have claimed for himself, was allotted to his children. Indeed, he became bound to William Love in a heavy penalty, that the present plaintiff, who was nineteen years old, would upon coming of age abide by the division then made. From that time to the present, the plaintiff does not shew the least dissatisfaction on the part of either Cole or his children with, what was then done. On the contrary, it is to be collected from the bill, that those persons insist on that transaction as a binding partition
 
 pro tanto ;
 
 for it states the children to be in possession of the negroes then allotted to them and their increase, claiming them as their own ; and there is nothing to create a suspicion, that their father wishes to disturb them, if he could. But whatever doubt might have been affected on that point, there is now no room for any ; inasmuch as Leake, the administrator olMrs.Cole, and therefore having the formal and legal right to succeed to her rights, so far from disturbing that division, insists on it in his answer, as having been made and as being obligatory.
 

 The bill does not seek to impeach it on the ground of the plaintiff’s infancy at the time it was made. But if it had, the attempt would have been unavailing ; for the plaintiff
 
 *111
 
 accepted the negroes allotted as his share, kept them ten or fifteen years after his full age, and then sold them as his own in severalty.
 

 To the view that has been thus taken, the bill raises two objections. One is, that Mrs. Love did not in “any competent way” relinquish her interest in those negroes, as one of the next of kin of Richmond Love. This we suppose to mean, that, as this transaction occured after 1806, a writing was requisite to the transfer of her right in the slaves. We will not now undertake to determine, whether a distributive share in an intestate’s estate consisting of slaves, must be assigned by writing in the same manner that the slaves specifically must be. If it must be, because it is within the mischief provided for in the act of 1806, then it will follow, that this case is within the provision to that act, because there was an actual possession by the donees until the death oí the donor intestate. If, however, a gift in writing be necessary, yet here it would be dispensed with by the delivery of the negroes to the donees, their division of them and the consequent possession by each of the parlies in severalty for nearly thirty years. The possession thus taken and held was adverse to the owner;
 
 Powell
 
 v
 
 Powell,
 
 1 Dev. & Bat. Eq. 319; and in analogy to the operation of the statute of limitations at law, would bar the donor, or indeed would authorise the presumption of a gift in writing or any thing else requisite to support it. And this is more especially proper in this case, since there is so strong a probability that the relinquishments of Mrs. Love and Mr. Cole were the one the consideration of the other.
 

 The other objection raised in the bill is, that there was not “ a valid division,” because there was no administrator of the intestate Richmond Love. But we think that circumstance cannot in this Court impair the obligation of the division, followed up as it has been by such long possessions in severalty and other acts of ownership and disposition. We need not enquire whether at this day the plaintiff, as administrator of Richmond, could maintain an action at law for the slaves Caesar and John, who belonged to his intestate ex
 
 *112
 
 clusively. Admit that he could, and that the other negroes st0°d, us to that point, on the same ground, yet it would be clearly improper to allow him in equity to rip up this partition, which was made by the persons entitled to the property, in the vie,w of the Court of Equity, and, in truth, according to their respective interests or shares as fixed'in the Court of Equity, The plaintiff did not administer for the purpose of satisfying debts. His intestate owes nothing : it is not pretended. The plaintiff is, therefore, but an administrator purely in trust for the next of kin of his intestate brother. If he were a stranger, he could not disturb the arrangement which his
 
 cestuis que trusts
 
 had made : much less can he do so, when, as one of the next of kin/he himself joined in the partition and has enjoyed his share under it. As the case stands, the next of kin — there being no creditors — were the real owners of the property, andthelegal title, subsequently got by the administration, but a shell. It may be used to protect, but not to annoy the true owners. It was proper enough to obtain the administration with a view to a division of the other negroes, when the remainder would fall into possession upon the death of the widow. But as to the ten negroes that were divided in 1811, to wit, Bob, Delphia, Leice, Marshall, Pinkney, Tom, Aggy and Isaac, and Caesar and another Tom, which two last were bequeathed specifically to Richmond Love by his father, William the elder. the Court is of opinion, and so declares, that the division thereof then made is binding and conclusive on the parties before the Court. It is true, the Court cannot pronounce it to be so as against the children of Mrs. Cole, because they are not made parties to this cause. But we have no reason to suppose from the bill or from the answer of Leake, who married one of them, that those persons are dissatisfied or wish to disturb what has been done. But they have only a subordinate interest, namely, as representing the sister of Richmond in the division of his estate. As to the primary division, all the necessary parties are made ; since, in that Leake represents his intestate, Mrs. Cole, and his acts conclude the interests of Cole the surviving husband, and the
 
 *113
 
 plaintiff represents his intestate Richmond. It is, therefore, not indispensable to make the children of Mrs. Cole parties to this cause to enable the Court to make any decree, although we cannot decide every part of the controversy unless they .shall be made parties. The bill seeks, first, a division of the negroes given in remainder, including some that have already been divided
 
 ;
 
 and that in such division a full share or fourth thereof shall be allotted to the plaintiff as administrator of Richmond Love, deceased. Upon that we have declared that the division which was made of ten slaves in 1811, is conclusive on the plaintiff and the defendants in this s'uif. But as to the other slaves included in the bequest in remainder, and their increase, there is no objection to the division as prayed; and the respective parlies must in a reasonable time produce all the said slaves, thus to be divided, before a commissioner of the Court, to be valued, and allotted into four equal parts, whereof the plaintiff is entitled to one in his own right and to another as administrator of Richmond Love, deceased, and the defendant Leake as administrator of. Mrs. Cole, and the defendant, Richmond Love, as the executor of his father, William Love, is, each entitled to one share, And there must also be a reference to ascertain the profits made and by whom, or the reasonable hires, accruing from those slaves since the tenant for life died.
 

 The bill likewise seeks that the share, that may be thus allotted to the plaintiff as administrator of Richmond Love, may be again divided or distributed ; and therein the plaintiff claims a double share, that is to say, one as brother of the intestate and one under his mother’s assignment. The validity of this assignment has been attacked. But from the reading of the depositions, the weight of the evidence seems to us decidedly in favor of her capacity to make the deed of gift, and, especially, as she might be expected to be naturally inclined to bestow such a bounty on her only surviving child. But the Court cannot proceed to a decree ou this part of the case, nor make any declaration : because the children of Mrs. Cole, who died before her brother, are some
 
 *114
 
 of his next of kin, and are necessary parties to a suit for the distribution of his estate. Therefore, the plaintiff must bring them in, or, as to this part of the case, the bill will, after a reasonable time,-be dismissed with costs, and thus let another and proper
 
 proceeding be
 
 instituted for the distribution of Richmond Love’s estate separately.
 

 Per CuRiAjvf, Decreed accordingly.